**Philip Joseph MAITA, Petitioner,**

v.

**Earl WHITMORE, Respondent.**

**No. C–72–1203–OJC.**

United States District Court,
N. D. California.

Nov. 9, 1973.

---

**10a.** 93 S.Ct. at 2614.

**11a.** Id.

Donald A. Tenenbaum, San Jose, Cal., for petitioner.

Evelle J. Younger, Atty. Gen., Thomas A. Brady, Deputy Atty. Gen., San Francisco, Cal., for respondent.

## MEMORANDUM AND ORDER

OLIVER J. CARTER, Chief Judge.

Petitioner has filed a petition for writ of habeas corpus which challenges the constitutionality of four contempt convictions stemming from violations of a temporary injunction issued by the Superior Court of San Mateo County. Jurisdiction is based upon 28 U.S.C. § 2254 in order that the Court may consider the federal constitutional issues raised.

There is no dispute as to the essential factual issues of the case. Petitioner operated "The Easy Street," a nightclub located in San Mateo, California. That establishment presented both live and cinematic entertainment and offered alcoholic beverages to its customers served by nude and partially nude waitresses.

On December 11, 1969, the District Attorney of San Mateo County, pursuant to Section 11226 of the California Penal Code, filed a civil complaint alleging that certain entertainment presented on the above-mentioned premises was lewd and therefore constituted a public nuisance. The complaint requested injunctive relief to abate the alleged nuisance.

After a ten day hearing on the matter, the San Mateo County Superior Court issued a temporary injunction on January 27, 1970 which enjoined petitioner from presenting on The Easy Street premises certain types of entertainment and engaging in certain modes of con-

duct that the court had determined to be "lewd". Petitioner challenged the injunction in both the California Court of Appeal and the California Supreme Court without success.

On September 14, 1971, the temporary injunction was modified pursuant to a stipulation by the parties. Said stipulation listed the conduct prohibited and resulted in the hearing on the plea for abatement being taken off calendar until deemed necessary by the parties.

After a period of some four and one-half months, petitioner was ordered to show cause why he should not be held in contempt for willful violation of the temporary injunction as modified by the September 14, 1971 stipulation.

The hearing on the order to show cause was held on February 18 and March 2 and 3, 1972 and the court, despite petitioner's request for a jury trial, determined that the conduct of the petitioner violated the terms set forth in the injunction. Petitioner was convicted of four counts of contempt—one for each of the days the proscribed conduct occurred (January 21, 22, 23, 24, 1972)—and was ordered to pay a fine of $1,000 and sentenced to six months in the county jail on one of the counts and was fined $500 and sentenced to sixty days in the county jail on each of the remaining three counts. Four months of the six month sentence were suspended and the jail sentences on all counts were ordered to run concurrently.

Petitioner again sought relief from the California Court of Appeal and the California Supreme Court and, his claim denied in those forums, petitioned the United States Supreme Court for a writ of *certiorari*.

His petition having been rejected by the United States Supreme Court, peti-

tioner now seeks federal habeas corpus relief citing, as noted above, the constitutional issues involved.

Petitioner has presented to the Court two basic constitutional issues. The first, relating to the question of prior restraints under the First Amendment, goes to the substance of the conviction itself. The second issue involves the procedural aspects leading up to petitioner's conviction—his right to a jury trial when charged with four contempt citations.

## PRIOR RESTRAINT ISSUE

The "Red Light Abatement Act," California Penal Code § 11255 et seq., sets forth a civil procedure designed to abate certain activities considered to be public nuisances. Included within the statute's regulatory parameters are those buildings or places used for the purpose of "lewdness" or where acts of "lewdness" are held or occur.

Petitioner alleges that he is attacking, not the Red Light Abatement Act itself, but the constitutionality of the injunction issued pursuant to the Act's proceedings [1] and the resultant contempt convictions.[2] The injunction, petitioner argues, constitutes a prior restraint insofar as no judicial determination of the First Amendment characteristics of the enjoined activities was made, and the injunction thereby prohibited protected as well as non-protected speech.

The prior restraint issue presented by petitioner is therefore twofold: were adequate hearings provided to petitioner, and if so, was the judicial determination that petitioner's activities were not protected by the First Amendment correct?

---

1. Section 11227 of the California Penal Code provides: "Whenever the existence of a nuisance is shown in an action brought under this article to the satisfaction of the court or judge thereof, either by verified complaint or affidavit, the court or judge shall allow a temporary writ of injunction to abate and prevent the continuance or recurrence of such nuisance."

2. Section 11229 of the California Penal Code provides: "Any violation or disobedience of an injunction or order expressly provided for by this article is punishable as a contempt of court by a fine of not less than two hundred dollars ($200) nor more than one thousand dollars, by imprisonment in the county jail for not less than one nor more than six months, or by both."

*Adequacy of Hearing*

Although the scope of the First Amendment as applied to certain types of expression is often uncertain, the Supreme Court has been quick to strike down governmental attempts to limit speech before it is uttered or before it is found to be offensive. Niemotko v. Maryland, 340 U.S. 268, 273, 71 S.Ct. 325, 95 L.Ed. 267 (1951); Near v. Minnesota, 283 U.S. 697, 713, 51 S.Ct. 625, 75 L.Ed. 1357 (1930). Accordingly, the necessity for a prompt adversary hearing prior to the abatement of any type of speech has become a cornerstone of First Amendment law. Carroll v. Princess Anne, 393 U.S. 175, 181, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968); Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 66, 83 S.Ct. 631, 9 L.Ed.2d 584 (1962); Kingsley Books, Inc. v. Brown, 354 U.S. 436, 440, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). The extent of judicial scrutiny of those statutory schemes intended to curtail freedom of expression was sharply delineated by the Supreme Court in the *Bantam Books, Inc.* case *supra.* Justice Brennan, speaking for the Court, stated that "[a]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity [citations]. We have tolerated such a system only where it operated under judicial superintendence and assured an almost immediate judicial determination of the restraint." Bantam Books, Inc. v. Sullivan, *supra*, 372 U.S. at 70, 83 S.Ct. at 639.

It is the quality of the above-mentioned "judicial superintendence" that is presently under attack; petitioner alleges that no judicial officer has ever declared the activities upon which the contempt convictions were based to be obscene and that he has been afforded no opportunity to prove that the conduct for which he is being punished is, in fact, protected speech. In support of his contentions, petitioner stresses the refusal of the court to consider the obscenity issue at the contempt hearings.

Petitioner is very much in error when he alleges that no hearings were held in order to determine the obscenity of the conduct in question. Pursuant to § 11227 of the California Penal Code, petitioner was allowed a full adversary hearing on the obscenity issue.[3] The evidence clearly indicates that petitioner took full advantage of the opportunity— he presented twenty-one witnesses and numerous exhibits over a two week span that concluded on January 8, 1970. When the hearings were terminated, the trial judge issued a memorandum decision incorporating the law and the facts in support of its determination that petitioner's conduct was obscene. Petitioner challenged the temporary injunction issued as a result of the above-described hearing by seeking a writ of prohibition in the California Court of Appeal and, when his petition was denied, sought without success a hearing in the California Supreme Court.

Upon his failure to have the injunction overturned by the appellate courts, petitioner voluntarily entered into a stipulation whereby he agreed to abide by the provisions of the temporary injunction as modified and the District Attorney would remove the hearing on the plea for abatement from the calendar.[4]

---

3. At this hearing the court equated the "lewdness" term utilized in the Red Light Abatement Act with obscenity and treated the terms as synonymous.

4. Due to this stipulation, petitioner prevented the final step of the Red Light Abatement Act from reaching fruition. This final step—a hearing to determine if the temporary injunction should be permanent—could have resulted in an order of abatement and a closing of The Easy Street premises. California Penal Code § 11230.

Respondent argues that petitioner's decision not to pursue a hearing on the plea for abatement constitutes a failure to exhaust state remedies. The only issue before this Court is the validity of the contempt convictions. A hearing on the plea for abatement, after petitioner has allegedly violated the terms of the temporary injunction, would have absolutely no effect on the contempt

■ The hearings provided to petitioner more than adequately meet the standards delineated by Bantam Books, Inc. v. Sullivan, *supra* and Kingsley Books, Inc. v. Brown, *supra*. Petitioner received prompt notice, a specific complaint, an adversary hearing, and an opportunity to contest the outcome of the hearing in the appellate courts. That such a hearing sufficiently meets constitutional standards is made clear by the Supreme Court when it recently approved a scheme involving civil injunctions that is very similar to the Red Light Abatement Act. Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973).

■ Petitioner apparently believes that the First Amendment entitles him to litigate the obscenity issue twice—once at the time the temporary injunction is issued and once at any subsequent contempt hearing.[5] As was discussed above, petitioner's hearing prior to the issuance of the temporary injunction was sufficient to satisfy the constitutional provisions relating to freedom of expression. Once such a determination of obscenity is made and an injunction properly issued, the only consideration before the court in a contempt proceeding is if petitioner in fact violated the terms of the injunction. *Cf.* Walker v. Birmingham, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967).

Accordingly, the judge's failure to allow petitioner to litigate the obscenity issue at the contempt trial did not deny petitioner a hearing on that issue and does not constitute a prior restraint.

*Determination of Obscenity*

■ The injunction having been properly issued, the remaining question relating to the First Amendment involves the sufficiency of the issuing court's determination that petitioner's activities were obscene. Petitioner clearly cannot be punished for dissemination of speech that is constitutionally protected. *Cf.* Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). As noted above, however, it is the determination of the court issuing the temporary injunction, not the court hearing the contempt proceedings, with which this Court is concerned.

The test utilized by the court issuing the injunction (hereinafter referred to as the trial court) is identical to that set forth by the United States Supreme Court in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). The trial court defined obscene matter "as that which taken as a whole, the predominant appeal of which to the average person, applying contemporary standards, is to *prurient interest*, . . . and is matter which taken as a whole goes *substantially beyond the customary limits of candor* in description or representation of such matters; and is matter which taken as a whole *is utterly without redeeming social importance or value*." (Emphasis in original memorandum decision).

Applying the above-mentioned standards to the activities at The Easy Street premises, the trial court determined that those activities were obscene and therefore not constitutionally protected. It is thus apparent that the trial court utilized a test that is more stringent than

---

convictions. Consequently, such a hearing is not a "remedy" within the meaning of 28 U.S.C. § 2254(b) and petitioner's stipulation cannot be equated with a failure to exhaust state remedies.

It should be noted, however, that petitioner cannot now complain that he did not receive a hearing regarding the issuance of a permanent injunction. The adequacy of hearing and determination of obscenity issues dis-

cussed above relate only to the issuance of a *temporary* injunction.

5. At the hearing on the contempt citation, the Superior Court, over petitioner's vigorous objection, determined that the obscenity question was irrelevant and refused to hear any evidence on the issue. This refusal appears to be the basis of petitioner's argument that he was allowed no hearing on the constitutional issue involved.

required by the Constitution. Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

■ The Supreme Court has indicated that ". . . the states have greater power to regulate nonverbal, physical conduct than to suppress depictions or descriptions of the same behavior." Miller v. California, supra at 26, 93 S.Ct. at 2616. This wider degree of latitude in regulating nonverbal, physical conduct has been expressed in several different contexts by the Court. See, e. g., California v. LaRue, 409 U.S. 367, 93 S.Ct. 390, 34 L.Ed.2d 342 (1968); United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). Conduct including elements of both speech and non-speech may be regulated only if "the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." United States v. O'Brien, supra, 391 U.S. at 377, 88 S.Ct. at 1679.

■ The state's interest in abating the type of conduct with which petitioner was involved has been judicially recognized, Paris Adult Theatre I v. Slaton, supra at 57–65, 93 S.Ct. 2628, and petitioner makes no showing, and the Court can perceive none, that the state's action goes beyond that necessary to promote the furtherance of said interest. Accordingly, the trial court's determination that petitioner's activities were not protected by the First Amendment is in concert with established judicial guidelines and should not be overturned.

■ It should be noted that petitioner also argues that he is being punished

for future conduct, as yet unascertained, because of his past activities. The temporary injunction, however, carefully delineates the conduct that is to be proscribed and prohibits only the continuance of activities that the trial court has determined to be obscene. In fact, the Miller case supra, suggests some "plain examples" of what type of conduct could be regulated as obscene that are identical to those activities set forth in the temporary injunction. Therefore, it is clear that the temporary injunction does not restrict some vague, unspecified future conduct, but details explicitly those obscene acts that are not to be repeated.

## RIGHT TO JURY TRIAL ISSUE

At his hearing on the contempt citations, petitioner's request that he be tried by a jury was denied. Petitioner alleges that the Sixth Amendment, as applied to the states through the Fourteenth Amendment, entitled him to have a jury trial on the contempt issue.[6]

■ The constitutional perimeters of the right to jury trial have been established with some degree of certainty. The Fourteenth Amendment guarantees a jury trial in all criminal cases except when the offense involved is considered to be "petty." Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Additionally, a criminal contempt charge[7] is a crime in every essential respect and therefore only petty contempts may be tried without a jury. Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). Thus it is clear that petitioner would be entitled to a jury trial if the contempt citations are to be considered serious.

■ The guidelines established by the Supreme Court are somewhat less

---

6. It should be carefully noted that petitioner does not allege that he is entitled to a jury trial at any proceeding other than the contempt hearing, and the Court addresses the issue only in that context.

7. Petitioner was clearly facing criminal contempt charges—he was being punished for

disobedience of a court order; the contempt charges were not intended to be remedial in effect. Compare Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966) with Shillitani v. United States, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed. 622 (1966).

definitive in fleshing out the distinction between the serious and petty offense. It has been somewhat categorically stated that no offense can be deemed petty where imprisonment for more than six months is authorized. Baldwin v. New York, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed. 2d 437 (1969). Six months has been selected as an objective criterion reflecting the seriousness with which society regards any particular offense, *cf.* District of Columbia v. Clawans, 300 U.S. 617, 628, 57 S.Ct. 660, 81 L.Ed. 843 (1937), and thus an appropriate measure of the constitutional necessity for a jury trial. It is the determination of this six month period that presents the key issue in the case at bar.

 It is clear that, if a specific penalty is authorized, that potential penalty is the factor that must be considered in determining the right to a jury trial. Frank v. United States, 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969) ; Duncan v. Louisiana, *supra.* Thus the penalty actually imposed by the court—six months in the county jail on one count (four months suspended) and sixty days in the county jail on the remaining counts in the instant case [8]—is not the relevant factor governing the availability of a jury trial.[9] In Duncan v. Louisiana, for example, the defendant received only a sixty day sentence and a $50 fine. However, since the maximum penalty authorized was two years imprisonment, the offense could not be considered petty and the defendant was entitled to a trial by jury.

The maximum penalty authorized for the offense petitioner was convicted is six months in jail. However, petitioner argues that the maximum authorized penalty he faced at the contempt hearing was not a mere six months, but two years —six months on each of the four counts with which he was charged. Thus the question the Court must decide is wheth-

er—when charged with four counts of contempt—petitioner should be permitted to aggregate the authorized sentences in order to determine his right to a jury trial.

Although criminal contempt matters are generally to be treated as regular criminal charges, there exist considerations in the contempt situation not applicable to the more conventional criminal case. Bloom v. Illinois, *supra.* The virtually limitless authority of a court within the contempt framework was a major factor behind the extension of the right to a jury to the contempt trial. The *Bloom* court was very anxious to interpose the jury between the defendant and what the court termed "the arbitrary exercise of official power." Bloom v. Illinois, *supra,* 391 U.S. at 202, 88 S.Ct. at 1482.

It was this potential for judicial abuse that prompted the Seventh Circuit to adopt the aggregation rule in United States v. Seale, 461 F.2d 345 (7th Cir. 1972). In that case the defendant was sentenced to three months imprisonment for each of sixteen acts of misconduct that occurred during his trial. The *Seale* court, cognizant of the need for some restrictions on the trial court's summary contempt power, aggregated the sentences and, since the total exceeded six months, determined that the defendant was entitled to a jury trial. It should be noted that the aggregation rule was adopted to a very limited extent; only in summary contempt proceedings where a judge waits until the termination of the proceedings to cite for contempt would the sentences be combined. The rationale behind this rule is sound—the court could impose punishment greatly in excess of six months for one "outrageously contumacious" act by spreading out the sentence among other, less serious offenses. United States v. Seale, *supra,* at 355.

---

8. The fine imposed by the Court will be discussed *infra.*

9. If no penalty is authorized, then the court should look to the severity of the penalty

actually imposed. Frank v. United States, *supra.* Since § 11229 of the California Penal Code specifically authorizes a maximum penalty of six months, the penalty actually imposed by the court seems to be irrelevant.

Although the *Seale* case provides some insight into the relationship between contempt convictions and the right to trial jury, it is by no means determinative of the issue presented by the case at bar. The *Seale* court was careful to emphasize the summary nature of the contempt involved and state that it did not express an opinion in the case of an "indirect" contempt for violation of a court injunction. United States v. Seale, *supra* at 355. The Court additionally pointed out that the indirect contempt situation is not necessarily as susceptible to the same abuses as the direct contempt power. This, to a certain extent, is true. However, there exist similar difficulties in the contempt situation where the court is punishing for violation of its injunction that equal or surpass those dangers inherent in the summary contempt proceedings. Accordingly, this Court must examine the petitioner's contempt convictions against the background of those cautions articulated in *Bloom* and *Seale* and determine if there exists sufficient cause to cumulate the authorized sentences in the case at bar.

██ Petitioner was charged with four counts of contempt—*i. e.*, violation of the temporary injunction on each of four consecutive days (January 21, 22, 23, 24, 1972). The acts violating the injunction could best be characterized as a continuing course of conduct; there appears to be no real variation in petitioner's conduct on any of the four days in question. The decision to cite petitioner on four counts is thus somewhat arbitrary—petitioner was not cited for separate and distinct acts, but merely for each of the days the proscribed conduct happened to take place—since there appears to be no legal significance connected with the mere passage of time. The issues presented in the case at bar are therefore analogous to those in the *Seale* case. The Court could divide petitioner's conduct into various periods and thus impose, separately, penalties it could not otherwise assess without allowing a jury trial. Thus, by compartmen-

talizing conduct that is essentially continuous into blocks of time, a court could mete out penalties far in excess of six months and effectively avoid the necessity of a jury trial.

Although the aggregation of sentences issue has received little attention from the courts, the "continuing course of conduct" emphasis is hardly unique. The First Circuit has recognized that a witness commits only a single offense when he continuously refuses (upon First Amendment grounds) to answer questions relating to a "single subject" or a "single line of inquiry." Baker v. Eisenstadt, 456 F.2d 382 (1st Cir. 1972). The court in *Baker* was "wary lest prosecutors by their sheer ingenuity in conceiving and stamina in asking multiple questions calling for slightly different answers, be able to proliferate offenses." Baker v. Eisenstadt, *supra* at 390.

The Seventh Circuit, interpreting the *Seale* decision, indicated that the aggreation rule would be applicable in a situation where the contempt "oppressively converts a single continuing offense into a series of individual ones." In re Chase, 468 F.2d 128, 135 (7th Cir. 1972). Although the court determined that the defendant's conduct was not a continuous offense, its concern with the "transparent proliferation of contempts" is of significance to the case at bar.

Petitioner is confronted with a dilemma identical to that criticized in the above-mentioned cases. His conduct having been fragmented into four segments, petitioner's potential imprisonment for a single course of conduct has escalated into a total of twenty-four months. It would appear that petitioner's conduct can be manipulated in such a manner as to artificially expand the number of contempt counts and thereby avoid the necessity of a jury trial. It is such manipulative potentialities that were specifically condemned by *Bloom*, *Baker*, *Seale*, and *Chase*.

It should be noted that, in the case at bar, petitioner was actually sentenced to only six months imprisonment on one

**1340**

count, two months imprisonment on the other three counts to run concurrently with the six month sentence, and four months of the six month sentence were suspended. Petitioner thus, as a practical matter, is confronted by only two months actual jail time. However, as noted above, Frank v. United States, *supra* makes clear that the maximum *authorized* penalty is the determining factor. Petitioner faced a maximum sentence of twenty-four months when his contempt trial commenced. It was at that time his right to a jury trial coalesced—not when sentence was actually imposed.

■ The Court wishes to stress that there exists no evidence that the state court or any of the agencies involved acted in an arbitrary manner or manipulated the charges solely to deprive petitioner of his jury trial. However, petitioner's right to a trial by jury cannot be gainsaid. The potential for abuse and manipulation exists; petitioner's constitutional right cannot be predicated upon his ability to demonstrate bad faith on the part of the court.

Since petitioner's right to a jury trial existed at the time the contempt trial began, the Court believes that petitioner should be provided every opportunity to exercise that right. Accordingly, the entire sentence of the state court should be vacated and petitioner allowed a new trial before a jury. That trial, however, shall be limited solely to the issue of whether petitioner was in violation of the temporary injunction; ♦ petitioner will not be allowed another opportunity to test the validity of said injunction.

■ Petitioner also alleges that he was entitled to a jury trial because the fines ($1,000 on one count and $500 on the remaining three counts for a total of $2,500), when aggregated, amount to such a sum that the offense could not be deemed petty. This issue, however, was not argued before any state court and thus could not be considered by a federal court due to petitioner's failure to exhaust state remedies. 28 U.S.C.A. § 2254(b).

■ The dividing line between a petty offense and a serious offense may be determined by the amount of fine involved. See, *e. g.*, Philipps v. United States, 457 F.2d 1313 (8th Cir. 1972); United States v. R. L. Polk & Co., 438 F.2d 377 (6th Cir. 1971). However, this determination is an issue that should have been placed squarely before the state courts in order to provide them with the opportunity to consider the seriousness of the offense in relation to the fine involved.

Although the Court thus refuses to consider the fine issue, the entire sentence—both the imprisonment and the fine—must be vacated. If the Court were to allow the fine to stand and vacate only the imprisonment part of the sentence, inconsistencies could result if, upon retrial, the jury held that petitioner had, in fact, not violated the injunction. Accordingly, since the Court has concluded that petitioner has a right to a jury trial, the entire judgment and sentence must be vacated.

Accordingly, it is ordered that the judgment and sentence resulting from the contempt proceedings be, and the same are, hereby vacated and the case remanded so that petitioner is within ninety (90) days afforded an opportunity for a jury trial in said contempt proceedings. Said contempt proceedings are limited solely to the issue of whether petitioner violated the above-mentioned temporary injunction.

It is further ordered that petitioner's claim that the injunction constitutes a prior restraint in violation of the First Amendment be, and the same is, hereby denied.