[Crim. No. 14439. First Dist., Div. One. Sept. 8, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
EARL KUHNS et al., Defendants and Appellants.

736

## Counsel

Wells & Chesney, Arthur Wells, Jr., and Richard L. Chesney for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart and Alvin J. Knudson, Deputy Attorneys General, Peter A. Chang, Jr., District Attorney, and Christopher C. Cottle, Assistant District Attorney, for Plaintiff and Respondent.

## Opinion

SIMS, J.—As a result of a certification, hereinafter detailed, the defendants, despite the establishment of the constitutionality of the statutes under which they were convicted (Pen. Code, § 311[1] and § 311.2, subd. (a)[2]; see *Bloom* v. *Municipal Court* (1976) 16 Cal.3d 71 [127

---

[1]So far as is pertinent to this review, section 311 of the Penal Code provides as follows: "As used in this chapter:

"(a) 'Obscene matter' means matter, taken as a whole, the predominant appeal of which to the average person, applying contemporary standards, is to prurient interest, i.e., a shameful or morbid interest in nudity, sex, or excretion; and is matter which taken as a whole goes substantially beyond customary limits of candor in description or representation of such matters; and is matter which taken as a whole is utterly without redeeming social importance.

"(1) The predominant appeal to prurient interest of the matter is judged with reference to average adults unless it appears from the nature of the matter or the circumstances of its dissemination, distribution or exhibition, that it is designed for clearly defined deviant sexual groups, in which case the predominant appeal of the matter shall be judged with reference to its intended recipient group.

"(2) In prosecutions under this chapter, where circumstances of production, presentation, sale, dissemination, distribution, or publicity indicate that matter is being commercially exploited by the defendant for the sake of its prurient appeal, such evidence is probative with respect to the nature of the matter and can justify the conclusion that the matter is utterly without redeeming social importance.

"(b) 'Matter' means any book, magazine, newspaper or other printed or written material or any picture, drawing, photograph, motion picture, or other pictorial representation or any statute or other figure, or any recording, transcription or mechanical, chemical or electrical reproduction or any other articles, equipment, machines or materials.

"(c) 'Person' means any individual, partnership, firm, association, corporation or other legal entity.

"(d) 'Distribute' means to transfer possession of, whether with or without consideration.

"(e) 'Knowingly' means being aware of the character of the matter or live conduct.

"(f) 'Exhibit' means to show.
. . . . . . . . . . . . . . . . . . ."

[2]Subdivision (a) of section 311.2 provides: "Every person who knowingly sends or causes to be sent, or brings or causes to be brought. into this state for sale or distribution, or in this state possesses, prepares, publishes, or prints, with intent to distribute or to exhibit to others, or who offers to distribute, distributes, or exhibits to others, any obscene matter is guilty of a misdemeanor."

Cal.Rptr. 317, 545 P.2d 229]), seek to press alleged errors to reverse their convictions. We hold that there is no merit to their claims of error in the following fields: (1) the manner in which the jurors who convicted them were selected; (2) the contention that the provisions of paragraph (2) of subdivision (a) of section 311, regarding evidence to establish that the matter is utterly without redeeming social importance, are unconstitutional and were improperly made the subject of an instruction, (3) alleged lack of proof and misdirection of the jury on the issue of scienter, (4) alleged discrimination, which denies both the owner and the clerk equal protection of the law, (5) insufficiency of the evidence to establish that the material involved was obscene. We do find that there was insufficient evidence to convict the defendant clerk of two of the three charges of which he was found guilty.

## HISTORY OF THE CASE

On February 4 and 14, 1971, amended complaints were filed in the Municipal Court for the Santa Cruz County Judicial District, County of Santa Cruz, charging each appellant with a total of three counts of violation of Penal Code section 311.2 (distribution and exhibition of obscene matter). Appellants entered pleas of not guilty to the charges.

The charges resulted in two separate jury trials. The first trial which took place in May 1971 concerned the magazine "Response, the Photo Magazine of Sex for Women." The case bore the numbers CR24014 and CR 24015 in the municipal court, and bore docket number 48 in the appellate department. As a result of the convictions in this trial, defendant Kuhns received a sentence of 90 days, one day suspended, and was fined $1,250. Defendant Castner was sentenced to 40 days and was fined $625.

The second trial took place in September and October 1971 and involved two books entitled "Animal Lovers" and "Sex and the Teenager." The case bore the numbers CR24034, CR24035, CR24142, and CR24143 in the municipal court, and bore docket numbers 58, 59, 60 and 61 in the appellate department. As a result of these convictions, defendant Kuhns was given 180 days, one day suspended, concurrent sentences and fined $1,250 on each count ($2,500 total). Defendant Castner was given 90-day concurrent sentences and fined $625 on each count ($1,250 total).

On November 9, 1972, the Appellate Department of the Santa Cruz County Superior Court simultaneously affirmed the judgments of conviction. Appellants remained on bail while they filed a petition for writ of certiorari before the United States Supreme Court. Following the decision in *Miller* v. *California* (1973) 413 U.S. 15 [37 L.Ed.2d 419, 93 S.Ct. 2607] [rehg. den., 414 U.S. 881 (38 L.Ed.2d 128, 94 S.Ct. 26)], the petition for certiorari was granted, the judgment of the appellate department was vacated, and the matter was remanded to the appellate department for further consideration in light of *Miller* v. *California,* *supra.* (*Kuhns* v. *California* (1973) 413 U.S. 913 [37 L.Ed.2d 1035, 93 S.Ct. 3060].)

Upon reconsideration, the Appellate Department of the Santa Cruz County Superior Court again affirmed the judgments. Once again appellants petitioned for writ of certiorari before the United States Supreme Court. That petition was denied on the ground that the decision which appellants sought to have reviewed was not by the highest state court in which a decision could be had as required by 28 United States Code section 1257. (*Kuhns* v. *California* (1974) 419 U.S. 1066 [42 L.Ed.2d 662, 95 S.Ct. 652].)

Upon remand to the appellate department, appellants moved for recall of the remittitur, relief from default, and to vacate the judgment. On June 3, 1975, an order was filed in the superior court by which these motions were granted. By the same order the cause was certified for transfer to the Court of Appeal pursuant to the provisions of Penal Code section 1471 and California Rules of Court, rules 62 and 63.

On July 7, 1975, this court granted a transfer of the instant case, determining that it involved the same issues then on appeal before the California Supreme Court in *Bloom* v. *Municipal Court.* Determination of those issues was deferred in anticipation of the filing of the opinion in *Bloom* by the court. (*Bloom* v. *Municipal Court* (1976) 16 Cal.3d 71 [127 Cal.Rptr. 317, 545 P.2d 229].) The *Bloom* opinion was adverse to several of the appellants' claims concerning the unconstitutional vagueness of Penal Code section 311.2.

Thereafter, appellants filed a supplemental brief on appeal. Appellants no longer argue several contentions made below. The cause has been submitted on that brief and respondent's reply.

## FACTS

On January 2, 1971, Lieutenant Charles Scherer of the Santa Cruz Police Department entered Frenchy's K & T Bookstore in the City of Santa Cruz and purchased a magazine entitled "Response, the Photo Magazine of Sex for Women." Petitioner Castner and petitioner Kuhns were both involved in the transaction, the former producing a copy of the magazine for Scherer, and the latter receiving the lieutenant's money. Kuhns was the owner of the store and Castner was a clerk.

The magazine contained pictures and text that portrayed graphically a broad range of heterosexual and homosexual conduct between adults, including depictions of sexual intercourse and oral sex. The magazine was the basis of the first count of violating Penal Code section 311.2 charged against appellants.

On January 7, 1971, a different Santa Cruz police officer entered Frenchy's K & T Bookstore and requested a book depicting sex between animals and people. Appellant Kuhns indicated an area of the store and the officer eventually obtained and purchased a book called "Animal Lovers." On February 4, 1971, another officer returned to the store and purchased a book entitled "Sex and the Teenager, An Illustrated Study." The two books contained photographs showing heterosexual and homosexual intercourse, oral copulation, and intercourse and sex acts with animals. These books were used for the second and third charge of violating Penal Code section 311.2.

### I

At the outset of each action the defendants challenged the entire jury panel on the grounds that it excluded all those persons residing in the judicial district who had been residents for less than one year. It was stipulated that the jury panel had been drawn in compliance with the provisions of section 198 of the Code of Civil Procedure as it then read[3]

---

[3]Section 198 then provided in pertinent part:

"A person is competent to act as juror if he be:

"1. A citizen of the United States of the age of twenty-one years who shall have been a resident of the state and of the county or city and county for one year immediately before being selected and returned; . . ."

As of March 4, 1972, "18" was substituted for "twenty-one" in subdivision 1. (Stats. 1971, ch. 1748, § 29, p. 3748.)

In 1975 the statute was amended to read in part, "1. A citizen of the United States of the age of 18 years who meets the residency requirements of electors of this state; . . ." (Stats. 1975, ch. 172, § 1, p. 317, effective Jan. 1, 1976.)

and thus did in fact exclude such persons. Defendants' arguments that their constitutional rights to due process, a fair trial and equal protection of the law had been violated, were rejected and the challenges were overruled. In the action first tried the defendants made the further objection that the panel was drawn only from the list of registered voters, and unconstitutionally denied the defendants of a panel including all other eligible residents who had neglected to maintain their registration.

Their arguments were pressed in briefs filed with the appellate division of the superior court. Defendants now concede that meanwhile the issue, as it arose under section 198 as it read at the time of trial, has been resolved against them. In *Adams* v. *Superior Court* (1974) 12 Cal.3d 55 [115 Cal.Rptr. 247, 524 P.2d 375], the majority opinion recites, "The Jury Commissioner of San Diego County seeks writ of mandate compelling respondent superior court to set aside an order declaring Code of Civil Procedure section 198 unconstitutional and directing him to select petit jurors without regard to the section's one-year residency requirement. We conclude the requirement does not violate due process or the equal protection guarantees of the Fourteenth Amendment to the United States Constitution or article I, sections 11 and 21 of the California Constitution." (12 Cal.3d at p. 58, fn. omitted.)

 Undaunted, defendants assert that the amendment of section 198 in 1975 (see fn. 3 above) was intended to reduce the residency requirement, and that it should be given retroactive effect, at least in those cases which are not final, where proper objection was interposed before the trial court. They suggest that it should be applied as a procedural change. (See *People* v. *Bradford* (1969) 70 Cal.2d 333, 343 [74 Cal.Rptr. 726, 450 P.2d 46] [change in testimonial privilege, cert. den., 399 U.S. 911 (26 L.Ed.2d 566, 90 S.Ct. 2204)]; *People* v. *Snipe* (1972) 25 Cal.App.3d 742, 745-748 [102 Cal.Rptr. 6, 60 A.L.R.3d 1316] [change in period in which death must ensue to warrant prosecution for homicide]; and *People* v. *Berumen* (1969) 1 Cal.App.3d 471, 475 [81 Cal.Rptr. 757] [limitation of time of notice of motion to suppress].) The foregoing precedents are not controlling. Section 3 of the Code of Civil Procedure provides, "No part of [this Code] is retroactive, unless expressly so declared." (See also *People* ex rel. *City of Bellflower* v. *Bellflower County Water Dist.* (1966) 247 Cal.App.2d 344, 350-351 [55 Cal.Rptr. 584].)

There was no error in denying defendants' challenges to the jury panels.

## II

A reading of *Bloom* v. *Municipal Court, supra,* and the United States Supreme Court decisions referred to therein indicates that the California obscenity statutes as drafted and adopted in 1961 (Stats. 1961, ch. 2147, § 5, pp. 4427-4429, adding Pen. Code, §§ 311-312) incorporate concepts expounded in *Roth* v. *United States* (1957) 354 U.S. 476 [1 L.Ed.2d 1498, 77 S.Ct. 1304] [rehg. den., 355 U.S. 852 (2 L.Ed.2d 60, 78 S.Ct. 8)], and that they were revised in 1969 (Stats. 1969, ch. 249, §§ 1 and 2, pp. 598-599, revising Pen. Code, §§ 311 and 311.2) to give full play to principles further developed in *Memoirs* v. *Massachusetts* (1966) 383 U.S. 413 [16 L.Ed.2d 1, 86 S.Ct. 975]. (16 Cal.3d at pp. 76-77. See also *Zeitlin* v. *Arnebergh* (1963) 59 Cal.2d 901, 918-920 [31 Cal.Rptr. 800, 383 P.2d 152, 10 A.L.R.3d 707] with reference to 1961 legislation.) At the same time as the court decided *Memoirs* it rendered its opinion in *Ginzburg* v. *United States* (1966) 383 U.S. 463 [16 L.Ed.2d 31, 86 S.Ct. 942] [rehg. den., 384 U.S. 934 (16 L.Ed.2d 536, 86 S.Ct. 1440)]. The court prefaced its opinion by stating, "In the cases in which this Court has decided obscenity questions since *Roth,* it has regarded the materials as sufficient in themselves for the determination of the question. In the present case, however, the prosecution charged the offense in the context of the circumstances of production, sale, and publicity and assumed that, standing alone, the publications themselves might not be obscene. We agree that the question of obscenity may include consideration of the setting in which the publications were presented as an aid to determining the question of obscenity, and assume without deciding that the prosecution could not have succeeded otherwise." (383 U.S. at pp. 465-466 [16 L.Ed.2d at pp. 35-36].)

The majority of the court opined, "This evidence, in our view, was relevant in determining the ultimate question of obscenity and, in the context of this record, serves to resolve all ambiguity and doubt. The deliberate representation of petitioners' publications as erotically arousing, for example, stimulated the reader to accept them as prurient; he looks for titillation, not for saving intellectual content. Similarly, such representation would tend to force public confrontation with the potentially offensive aspects of the work; the brazenness of such an appeal heightens the offensiveness of the publications to those who are offended by such material. And the circumstances of presentation and dissemination of material are equally relevant to determining whether social importance claimed for material in the courtroom was, in the

circumstances, pretense or reality—whether it was the basis upon which it was traded in the marketplace or a spurious claim for litigation purposes. Where the purveyor's sole emphasis is on the sexually provocative aspects of his publications, that fact may be decisive in the determination of obscenity. Certainly in a prosecution which, as here, does not necessarily imply suppression of the materials involved, the fact that they originate or are used as a subject of pandering is relevant to the application of the *Roth* test." (*Id.,* pp. 470-471 [16 L.Ed.2d pp. 37-38].)

In a more limited sense the opinion states, "We perceive no threat to First Amendment Guarantees in thus holding that in *close cases* evidence of pandering may be probative with respect to the nature of the material in question and thus satisfy the *Roth* test." (*Id.,* p. 474 [16 L.Ed.2d p. 40], fn. omitted, italics added.) It concluded, "It is important to stress that this analysis simply elaborates the test by which the obscenity vel non of the material must be judged. Where an exploitation of interests in titillation by pornography is shown with respect to material lending itself to such exploitation through pervasive treatment or description of sexual matters, such evidence may support the determination that the material is obscene even though in other contexts the material would escape such condemnation." (*Id.,* pp. 475-476 [16 L.Ed.2d pp. 40-41].)

The language added in paragraph (2) of subdivision (a) of section 311 in 1969 (see fn. 1 above), unquestionably stems from *Ginzburg.* The principle, however, has been elsewhere recognized. In *Roth* v. *United States, supra,* Chief Justice Warren, in a concurring opinion, noted: "The conduct of the defendant is the central issue, not the obscenity of a book or picture. The nature of the materials is, of course, relevant as an attribute of the defendant's conduct, but the materials are thus placed in context from which they draw color and character. A wholly different result might be reached in a different setting." (354 U.S. at p. 495 [1 L.Ed.2d at pp. 1512-1513].) In *Memoirs* v. *Massachusetts, supra,* the plurality opinion stated, "On the premise, which we have no occasion to assess, that *Memoirs* has the requisite prurient appeal and is patently offensive, but has only a minimum of social value, the circumstances of production, sale, and publicity are relevant in determining whether or not the publication or distribution of the book is constitutionally protected. Evidence that the book was commercially exploited for the sake of prurient appeal, to the exclusion of all other values, might justify the conclusion that the book was utterly without redeeming social

importance. It is not that in such a setting the social value test is relaxed so as to dispense with the requirement that a book be *utterly* devoid of social value, but rather that, as we elaborate in *Ginzburg* v. *United States, post,* pp. 470-473, where the purveyor's sole emphasis is on the sexually provocative aspects of his publications, a court could accept his evaluation at its face value." (383 U.S. at p. 420 [16 L.Ed.2d at pp. 6-7]. See also *Hamling* v. *United States* (1974) 418 U.S. 87, 130 [41 L.Ed.2d 590, 628, 94 S.Ct. 2887] [rehg. den., 419 U.S. 885 (42 L.Ed.2d 129, 95 S.Ct. 157)]; *People* v. *Burnstad* (1973) 32 Cal.App.3d 560, 565-566 [108 Cal.Rptr. 247] [overruled on other grounds *People* v. *Superior Court (Freeman)* (1975) 14 Cal.3d 82, 87 (120 Cal.Rptr. 697, 534 P.2d 393)]; *People* v. *Sarnblad* (1972) 26 Cal.App.3d 801, 807 [103 Cal.Rptr. 211]; *People* v. *Stout* (1971) 18 Cal.App.3d 172, 175 [95 Cal.Rptr. 593]; *United States* v. *Dachsteiners* (9th Cir. 1975) 518 F.2d 20, 22-23 [cert. den., (1975) 421 U.S. 954 (44 L.Ed.2d 107, 95 S.Ct. 1688)]; and *State* v. *J-R Distributors, Inc.* (1973) 82 Wn.2d 584, 599 [512 P.2d 1049, 1059 [cert. den. (1974) 418 U.S. 949 (41 L.Ed.2d 1166, 94 S.Ct. 3217)]].)

The paragraph in question reads, "In prosecutions under this chapter, where circumstances of production, presentation, sale, dissemination, distribution, or publicity indicate that matter is being commercially exploited by the defendant for the sake of its prurient appeal, such evidence is probative with respect to the nature of the matter and can justify the conclusion that the matter is utterly without redeeming social importance." (Pen. Code, § 311, subd. (a)(2).) Defendants' attack is threefold. They contend that the so-called "pandering" statute is unconstitutional on its face and as applied to the facts of this case; that it was an error of constitutional dimensions to instruct the jury on the use to be made of the evidence; and that in any event there was insufficient evidence to warrant the instructions.

A

Although, in the appeal from the first trial, defendants suggested that the statutory provisions violated the First Amendment, they confined their attack to the instructions given on the subject of "pandering." On the appeal from the second trial and before this court it is contended that the provisions of paragraph (2), of subdivision (a) of section 311, are unconstitutional because (1) they are overbroad, (2) they compel rather than permit an inference, (3) they erroneously permit inferences to be drawn on other elements of the offense, (4) they permit publications

which are not obscene in their origin to be found so, (5) they erroneously permit commercialism to become a factor of the crime, and (6) they are too vague.

Preliminarily we note that the constitutional test is now less stringent than that found in the California law—"whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value" (*Miller* v. *California, supra,* 413 U.S. 15, 24 [37 L.Ed.2d 419, 430-431]), rather than "utterly without redeeming social importance" (see *Bloom* v. *Municipal Court, supra,* 16 Cal.3d 71, 76-77; and *People* v. *Enskat* (1973) 33 Cal.App.3d 900, 904 and 910-911 [109 Cal.Rptr. 433] [cert. den. (1974) 418 U.S. 937 (41 L.Ed.2d 1172, 94 S.Ct. 3225)]). It well may be that defendants' arguments no longer rise to the level of constitutional dignity because the statute is merely a rule of evidence to be judged by ordinary standards of reasonableness. Be that as it may, we find no violation of constitutional principles as expostulated in *Ginzburg* and other cases reviewed above.

 We reject the argument that the statute is overbroad because it fails to include the "close cases" limitation mentioned in one quotation from *Ginzburg* (see 383 U.S. at p. 474 [16 L.Ed.2d at p. 40]). As noted in *Ginzburg* and the other cases the evidence is generally relevant in determining the question of obscenity, not only on the factor of social importance, but also in relation to the element of appeal to prurient interest (see 383 U.S. at p. 470 [16 L.Ed.2d at pp. 37-38]). The fact that *Ginzburg* may have been a close case, and that the evidence served to resolve "all ambiguity and doubt" (*id.*) does not indicate that the relevancy, as distinguished from the probative force, is any less in other cases. Nor does *Ginzburg* prescribe that the admission of such evidence, as urged by defendants, is limited to cases involving mailing and advertising as distinguished from the circumstances surrounding presentation, display and sale in a retail store. Moreover, we note that the defendants, in urging that the matter presented is not obscene on its face, are in effect urging that there is some question as to the nature of the material in question. The danger that the Bible, if improperly exploited, will be considered obscene material is controlled by the necessity of proving the other two elements of the statutory offense. There was no error in rejecting the defendants' instruction concerning a "close case" as proffered at the second trial.

The statute does provide that evidence of the circumstances which are set forth "*is* probative with respect to the nature of the matter." (Italics

added.) Defendants' contention that the provision is erroneous because the circumstances only *may* be probative in some cases, is answered by what we have said above. The circumstances are of general relevancy.

■ Defendants' argument that reference to "the nature of the matter" permits the use of evidence of circumstances for proof of issues other than social importance twists the meaning of "the matter" out of context. In any event, as noted in *Ginzburg*, it may throw light on the nature of the appeal which the material involved is designed to make. It was therefore not improper to reject defendants' instructions which conditioned use of evidence of circumstances of the presentation, display and sale upon prior proof beyond a reasonable doubt of the other two statutory factors—appeal to a prurient interest and substantial excess over contemporary community standards of candor.

Defendants state that the statute erroneously directs the fact finders that evidence of the circumstances "can justify the conclusion that the matter is utterly without redeeming social importance," because it will subject a distributor to punishment for salaciously advertising and selling what was prepared as a scientific treatise. Here again there must be establishment of the other factors set forth in the statute. (See *Kois* v. *Wisconsin* (1972) 408 U.S. 229, 232 [33 L.Ed.2d 312, 315-316, 92 S.Ct. 2245]; and *Redrup* v. *New York* (1967) 386 U.S. 767, 770-771 [18 L.Ed.2d 515, 517-519, 87 S.Ct. 1414] [rehg. den., 388 U.S. 924 (18 L.Ed.2d 1377, 87 S.Ct. 2091)].) On the other hand, it appears that the distribution of obscene matter cannot be concealed by a scientific veneer. (See *Hamling* v. *United States, .supra,* 418 U.S. 87, 92-93 and 130 [41 L.Ed.2d 590, 606-607 and 628].) "A quotation from Voltaire in the flyleaf of a book will not constitutionally redeem an otherwise obscene publication, . . ." (*Kois* v. *Wisconsin, supra,* 408 U.S. at p. 231 [33 L.Ed.2d at p. 315].)

Defendants claim that the statute's reference to commercial exploitation offends the principle "that commercial activity, in itself, is no justification for narrowing the protection of expression secured by the First Amendment." (*Ginzburg* v. *United States, supra,* 383 U.S. at p. 474 [16 L.Ed.2d at p. 40].) The statute, as did the court in *Ginzburg,* distinguishes between mere commercialism, in the sense of a sale for profit, and the promotion for such sales by reference to the prurient appeal of the material being sold.

■ Defendants assert that the words "circumstances," and "exploited" render the statute vague, and fail to give the distributor notice of

what sort of conduct will subject his product to the incriminating inference. These attacks for vagueness are similar to those made against obscenity statutes themselves. Such arguments have continually been rejected. (See *Hamling* v. *United States, supra,* 418 U.S. 87, 117-119 [41 L.Ed.2d 590, 620-622]; *Bloom* v. *Municipal Court, supra,* 16 Cal.3d 71, 77-81; and *People* v. *Enskat, supra,* 33 Cal.App.3d 900, 908-910.) The statute details that it is proper to explore the circumstances, or conditions, facts and events accompanying (see Webster's New Internat. Dict. (3d ed. 1961)) the production, presentation, sale, dissemination, distribution or publicity. If "circumstance" is a vague word, we must revise our instructions on circumstantial evidence. **(5)** Commercial exploitation connotes publicity and advertising. (*Id.*) It may include, as here, the manner in which goods are displayed.

There is no merit to defendants' attack on the constitutionality of paragraph (2) of subdivision (a) of section 311.

B

The trial court did not restrict itself to using the provisions of the statute as a guide to the admission of relevant evidence, or as a counterweight to evaluate the sufficiency of the evidence. In each trial instructions were given paraphrased from the statute and the precedents upon which it is based.

■ At the first trial the court gave an instruction which was substantially in the language of the statute, followed by close paraphrasing of language which has been quoted from *Ginzburg.*[4] (383 U.S. at

[4]These instructions read:
"In determining the question of whether the allegedly obscene matter is utterly without redeeming social importance, you may consider the circumstances of production, presentation, sale, dissemination, distribution, or publicity and, particularly, whether such circumstances indicate that the matter was being commercially exploited by the defendants for the sake of its prurient appeal. Such evidence is probative with respect to the nature of the matter and can justify the conclusion that the matter is utterly without redeeming social importance. The weight, if any, to which such evidence is entitled is a matter for the jury to determine.
"Circumstances of production and dissemination are relevant to determining whether social importance claimed for material was in the circumstances pretense or reality. If you conclude that the purveyor's sole emphasis is on the sexually provocative aspects of the publication, that fact can justify the conclusion that the matter is utterly without redeeming social importance.
"If the object of the work is material gain for the creator through an appeal to the sexual curiosity and appetite by animating sensual detail to give the publication a salacious cast, this may be considered evidence that the work is obscene."

p. 470 [16 L.Ed.2d at pp. 37-38].) Defendants complain that the court permitted the jury to consider the circumstances generally and then added, particularly with reference to commercial exploitation, whereas the statute only refers to the latter purpose. They disclose no error. The circumstances are relevant in any event, and in focusing on the commercial exploitation, the court left it open to the jury to find either way. There was no error from paraphrasing the statutory language.

■ Their objections that *Ginzburg* is only authoritative in mailing and advertising cases and in close cases have been reviewed above in connection with their attack on the statute. We reject such limitation and approve the phrasing of the second paragraph of the instruction.

■ The third paragraph again borrows from *Ginzburg*. There the opinion states, "Petitioners' own expert agreed, correctly we think, that '[i]f the object [of a work] is material gain for the creator through an appeal of the sexual curiosity and appetite,' the work is pornographic." (383 U.S. at p. 471 [16 L.Ed.2d at p. 38].) Defendants justly complain that the trial court here substituted "obscene" for "pornographic." This tends to overlook the other two factors set forth in the statute. It is erroneous in that regard and also in referring to "the creator," who was not before the court, as distinguished from the defendants who were charged with distributing and exhibiting obscene matter. This error, however, was not prejudiciously erroneous. In view of the instructions given with respect to the three elements of the offense, the jury could not have been misled that the evidence offered on this score would satisfy all elements of the offense, or that the creators' rather than the defendants' acts were under scrutiny. As we have seen, the evidence of circumstances may be used to throw some light on the factor of appeal to prurient interest. No prejudicial error is found in connection with the last paragraph of the instruction.

■ At the trial of the second charges the court charged the jury in the language of the statute, added a caveat that merely engaging in business for profit would not evidence lack of redeeming social importance, and included further matter apparently predicated on *Ginzburg*.[5] Since the

[5]These instructions read:

"Where circumstances of production, presentation, sale, dissemination, distribution, or publicity indicate that matter is being commercially exploited by the defendant for the sake of its prurient appeal, such evidence is probative with respect to the nature of the matter and can justify the conclusion that the matter is utterly without redeeming social importance.

"However, the mere fact, if it be a fact, that defendants were engaged in business for profit or that they made a profit, is not evidence in support of the conclusion that the

court read from the statute verbatim, the defendants' principal attack is on the constitutionality of the statute and has been disposed of above. The reference to the circumstances of "production" may be considered erroneous in an action for exhibiting and distributing a finished product unless there is evidence to connect the exhibitor and distributor with the producer. (Cf. *Mishkin* v. *New York* (1966) 383 U.S. 502, 504-505 and 509-510 [16 L.Ed.2d 56, 59-60 and 62-63, 86 S.Ct. 958] [rehg. den., 384 U.S. 934 (16 L.Ed.2d 535, 86 S.Ct. 1440)].) Here, however, there was no evidence concerning the manner in which the publications were originally produced, and the jury could not have been misled in either case by the use of the full complement of words found in the statute.

■ Defendants further object to the use of the phrase "sexually provocative aspects," and complain that a work may be sexually provocative and still have redeeming social importance. In the first case the reference was, as is found in *Ginzburg,* to "the purveyor's sole emphasis." (383 U.S. at p. 470 [16 L.Ed.2d at pp. 37-38].) In the second case, however, the phrase is related to "the sole emphasis of the matter." If the "matter" refers to the publication itself the instruction is overbroad. If the "matter" refers to the "circumstances of presentation and dissemination," referred to in the previous sentence, the instruction goes no further than to echo Mr. Justice Brennan, and tone down his reference to "that fact may be decisive in the determination of obscenity" to "that fact can justify a conclusion that the matter is utterly without redeeming social importance," thus echoing the statute. On reviewing the instructions as a whole we find no prejudicial error in the second trial.

C

■ Defendants finally urge that the instructions were improper because there was no evidence of any circumstances showing commercial exploitation of the particular publications involved in this case. (See *People* v. *Jackson* (1954) 42 Cal.2d 540, 546-547 [268 P.2d 6]; and *People* v. *Deloney* (1953) 41 Cal.2d 832, 842-843 [264 P.2d 532].) Significantly, in each of the foregoing cases, on which defendants rely, the court found there was evidence warranting the instruction. So here, the evidence

matter is utterly without redeeming social importance.

"Circumstances of presentation and dissemination are relevant to determine whether social importance claimed for material was in the circumstances pretense or reality. If you conclude that the sole emphasis of the matter is on its sexually provocative aspects, that fact can justify the conclusion that the matter is utterly without redeeming social importance."

which showed that the store contained nonprinted items of a sexual character, that there were 30 to 40 magazines in the store, displayed as were the publications involved, encased in plastic with a graphic sexual photo cut out and placed on the cover, and that there were substantial displays of sexually oriented books and magazines, warranted the giving of an instruction in accordance with the statute, at least with respect to the circumstances of presentation, sale, dissemination, distribution and publicity.

The further objection that the clerk was not responsible for the matters making up those circumstances misses the point. He was cognizant of them, and so is chargeable with knowledge that the matters involved were being commercially exploited for their prurient appeal.

No error is found with respect to the instructions under attack.

### III

The statute applies to those who "knowingly" distribute or exhibit obscene matter. (Pen. Code, § 311.2.) Since November 10, 1969, "knowingly" has been defined as "be aware of the character of the matter." (*Id.,* § 311, subd. (e); Stats. 1969, ch. 249, § 1, p. 598.) The amendment was apparently made to bring the statute in accord with *Mishkin* v. *New York, supra,* 383 U.S. 502. There the court stated: "The Constitution requires proof of scienter to avoid the hazard of self-censorship of constitutionally protected material and to compensate for the ambiguities inherent in the definition of obscenity. The New York definition of the scienter required by § 1141 amply serves those ends, and therefore fully meets the demands of the Constitution. [Citation.]" (383 U.S. at p. 511, fn. omitted [16 L.Ed.2d at p. 63].) The New York definition referred to was that found in *People* v. *Finkelstein* (1961) 9 N.Y.2d 342 [214 N.Y.S.2d 363, 174 N.E.2d 470], and quoted in *Mishkin* as follows: " 'A reading of the statute [§ 1141] as a whole clearly indicates that only those who are in some manner aware of the *character* of the material they attempt to distribute should be punished. It is not innocent but *calculated purveyance* of filth which is exorcised . . . .' " (383 U.S. at p. 510, fn. omitted [16 L.Ed.2d at pp. 62-63], quoting from 9 N.Y.2d at pp. 344-345 [174 N.E.2d at p. 471]. See also *Hamling* v. *United States, supra,* 418 U.S. 87, 119-124 [41 L.Ed.2d 590, 621-625]; *Ginsberg* v. *New York* (1968) 390 U.S. 629, 643-645 [20 L.Ed.2d 195, 206-207, 88 S.Ct. 1274] [rehg. den., 391 U.S. 971 (20 L.Ed.2d 887, 88 S.Ct. 2029)]; *People* v. *Enskat, supra,* 33 Cal.App.3d 900, 915; *People* v. *Adler* (1972) 25

Cal.App.3d Supp. 24, 36-37 [101 Cal.Rptr. 726] [vacated, 413 U.S. 912, 37 L.Ed.2d 1028, 93 S.Ct. 3043]; *People* v. *Pinkus* (1967) 256 Cal.App.2d Supp. 941, 948-950 [63 Cal.Rptr. 680]; and *People* v. *Campise* (1966) 242 Cal.App.2d Supp. 905, 914-915 [51 Cal.Rptr. 815].) The court further indicated (*id.*) that such knowledge of the character of the material satisfied the requirement of *Smith* v. *California* (1959) 361 U.S. 147 [4 L.Ed.2d 205, 80 S.Ct. 215] that an ordinance making it unlawful for any person to have an obscene writing in his possession in a bookstore is unconstitutional insofar as it attempts to impose criminal liability on the bookseller without establishing his knowledge of the contents of the book. (361 U.S. at pp. 153-155 [4 L.Ed.2d at pp. 211-212]. See also *People* v. *Wepplo* (1947) 78 Cal.App.2d Supp. 959, 965-967 [178 P.2d 853].)

## A

In the first action the jury was charged as set forth in the margin.[6] A similar instruction was given at the trial of the second ac- Defendants attack the first instruction because by use of the phraseology "it need only be established" the court "played down" the requisite of knowledge. The choice of words is unfortunate, but we cannot say it was prejudicial. The jury knew that the defendants were charged with "willfully, unlawfully and knowingly" distributing and exhibiting the obscene matter, and that the statute read "knowingly." They were also properly charged with respect to the burden of proof on the prosecution, and the necessity of proving every element of the offense. There was no prejudicial error from the manner in which the instruction was phrased.

 There is no merit to the contention that the court erred in advising the jury that it was unnecessary to establish that the accused had

[6]This instruction read: "In regard to the requirement of 'knowledge,' as set forth in these instructions, I instruct you that it need only be established that the defendants were aware of the character of the matter in question. It need not be established that they had come to a judgment that the matter was legally obscene. Nor is direct evidence that the defendants have personally perused the work in question necessary. For knowledge may be established by circumstantial evidence."

[7]This instruction read: "In regard to the requirement of 'knowledge,' as set forth in these instructions, I instruct you that it must be established that the defendants were aware of the character of the matter in question. It need not be established that they had come to a judgment that the matter was legally obscene. Nor is direct evidence that the defendants have personally perused the work in question necessary. For knowledge may be established by circumstantial evidence.

"Knowledge of the character of the items here cannot be inferred merely from the fact, if you find it to be a fact, that the defendant sold the items."

knowledge that the material was "legally" obscene. Nor was it error to refuse instructions that the defendants would have to have knowledge, not only of the character of the material, but also knowledge of the standards of candor in the community, of the prurient appeal of the publications and of the fact it had no redeeming social value. (See *Hamling* v. *United States, supra,* 418 U.S. 87, 119-124 [41 L.Ed.2d 590, 621-625].) There the court stated, "To require proof of a defendant's knowledge of the legal status of the materials would permit the defendant to avoid prosecution by simply claiming that he had not brushed up on the law. Such a formulation of the scienter requirement is required neither by the language of 18 U.S.C. § 1461 nor by the Constitution." (418 U.S. at pp. 123-124 [41 L.Ed.2d at pp. 624-625].)

Nor is there merit to the contention that knowledge may not be proved by circumstantial evidence. In *Smith* v. *California, supra,* the court tempered its ruling with the following statement: "Eyewitness testimony of a bookseller's perusal of a book hardly need be a necessary element in proving his awareness of its contents. The circumstances may warrant the inference that he was aware of what a book contained, despite his denial." (361 U.S. at p. 154 [4 L.Ed.2d at pp. 211-212].)

The jurors were properly told that sex and obscenity were not synonymous.

B

■ Defendants attack the evidence as insufficient to establish even knowledge of the contents of the publication. In these cases there was the evidence concerning the appearance of the stock in trade of the store, the fact that one defendant was the store owner and the other a clerk, that Castner and Kuhns both answered a question as to the contents of the books, and that the books had pictures from the contents attached to the covers. The decision of the jury is supported by substantial evidence. We cannot say on appeal that the jury were required to find that the circumstances indicated that they should have inferred as a "rational conclusion" that the defendants had never read the publications.

There was no error in the instructions on the subject of knowledge, nor lack of proof thereof.

## IV

At all times material in this case section 311.2 of the Penal Code had a provision exempting a motion picture operator or projectionist without a financial interest in his place of employment.[8] In 1975, effective January 1, 1976, a new subdivision exempted employees of a licensed employer under certain conditions.[9] Defendants contend that the former section discriminated against clerks and favored projectionists, and that the adoption of the new subdivision relieves the defendant clerk from criminal responsibility, or, if not, preserves an unconstitutional discrimination. They also assert that section 311.2, both before and after its amendment, discriminates against the defendant owner.

The contention that the projectionists' exemption renders the statute unconstitutional because it then violates the equal protection clause has been answered in *Gould* v. *People* ex rel. *Busch* (1976) 56 Cal.App.3d 909 [128 Cal.Rptr. 743], as follows: "It would be academic to analyze whether section 311.2 falls in the category of 'economic' or 'fundamental interest' or hybrid, and which standard should apply. We hold, applying the stricter standard, that the exemption of projectionists is valid and does not violate the equal protection clause because it tends to promote rather than inhibit dissemination of speech as protected by the First Amendment which constitutes a compelling state interest justifying the classification." (56 Cal.App.3d at p. 920. See also *People* v. *Haskin* (1976) 55 Cal.App.3d 231, 240-241 [127 Cal.Rptr. 426]; and *State* v. *J-R Distributors, Inc., supra,* 82 Wn.2d 584, 603-604 [512 P.2d 1049, 1061-1062]. Note *People* v. *Stout, supra,* 18 Cal.App.3d 172, 176-177.) We note the exemption only applies to a projectionist, otherwise qualifying, who exhibits, or possesses with intent to exhibit, any obscene matter. ▮ Since obscene matter, by definition, is denied the protection of the First Amendment (see *Miller* v. *California, supra,* 413 U.S. 15, 36 [37

---

[8]Subdivision (b) of section 311.2 provided and provides: "(b) The provisions of this section with respect to the exhibition of, or the possession with intent to exhibit, any obscene matter shall not apply to a motion picture operator or projectionist who is employed by a person licensed by any city or county and who is acting within the scope of his employment, provided that such operator or projectionist has no financial interest in the place wherein he is so employed."

[9]Subdivision (c) of section 311.2, as added effective January 1, 1976, provides, "(c) Except as otherwise provided in subdivision (b), the provisions of subdivision (a) with respect to the exhibition of, or the possession with intent to exhibit, any obscene matter shall not apply to any person who is employed by a person licensed by any city or county and who is acting within the scope of his employment, provided that such employed person has no financial interest in the place wherein he is so employed and has no control, directly or indirectly, over the exhibition of the obscene matter."

L.Ed.2d 419, 438]), there is no constitutional issue involved in the classification other than the equal protection guaranteed by the Fourteenth Amendment.

For the reasons stated above we also conclude that the addition of subdivision (c), insofar as it may be applicable to this case, is a proper exercise of the Legislature's right to classify regulatory statutes. (See *Adams* v. *Superior Court, supra,* 12 Cal.3d 55, 60-63.)

The new provisions exempt an employee who exhibits or possesses with intent to exhibit any obscene matter if he does so in the scope of his employment, and the other conditions set forth in the statute exist. Defendant clerk contends that he is entitled to the benefit of the new exemption because it abolishes the crime of which he was convicted. (See *Bell* v. *Maryland* (1964) 378 U.S. 226, 230-232 [12 L.Ed.2d 822, 826-827, 84 S.Ct. 1814]; *In re Dapper* (1969) 71 Cal.2d 184, 188 [77 Cal.Rptr. 897, 454 P.2d 905] [cert. den., 397 U.S. 905 (25 L.Ed.2d 90, 90 S.Ct. 906), rehg. den., 398 U.S. 954 (26 L.Ed.2d 299, 90 S.Ct. 1865)]; *In re Estrada* (1965) 63 Cal.2d 740, 742-746 [48 Cal.Rptr. 172, 408 P.2d 948]; *Spears* v. *County of Modoc* (1894) 101 Cal. 303, 305-307 [35 P. 869]; *Weissbuch* v. *Board of Medical Examiners* (1974) 41 Cal.App.3d 924, 929 [116 Cal.Rptr. 479]; and Witkin, Cal. Crimes (1975 Supp.) § 17A, pp. 20-22.) On the other hand section 9608 of the Government Code expressly provides as follows: "The termination or suspension (by whatsoever means effected) of any law creating a criminal offense does not constitute a bar to the indictment or information and punishment of an act already committed in violation of the law so terminated or suspended, unless the intention to bar such indictment or information, and punishment is expressly declared by an applicable provision of law." In *Sekt* v. *Justice's Court* (1945) 26 Cal.2d 297 [159 P.2d 17, 167 A.L.R. 833] [cert. den. (1945) 326 U.S. 756 (90 L.Ed. 454, 66 S.Ct. 96)] it was suggested that the provisions applied to prosecutions for offenses which were misdemeanors under state law. (26 Cal.2d at pp. 300-303. See also *People* v. *Orozco* (1968) 266 Cal.App.2d 507, 515 [72 Cal.Rptr. 452, 32 A.L.R.3d 1429].) If so, the prosecution of the clerk under the statute may continue. (See *Sekt* v. *Justice's Court, supra,* 26 Cal.2d 297, 300; *People* v. *McNulty* (1892) 93 Cal. 427, 436-442 [26 P. 597, 29 P. 61] [app. dism. (1893) 149-U.S. 645 (37 L.Ed. 882, 13 S.Ct. 959)]; Pen. Code, § 3; and Witkin, *op.cit.* (1963). Cf. *Bell* v. *Maryland, supra,* 378 U.S. 226, 232-237 [12 L.Ed.2d 822, 827-830]; *In re Estrada, supra,* 63 Cal.2d 740, 746-748; and Witkin, *op. cit.* (1975 Supp.) § 35, p. 47.)

It is unnecessary to explore the foregoing principles to determine their application to the cases under review. The charges in each trial were in the conjunctive. It was charged that the clerk "did wilfully, unlawfully and knowingly distribute *and* exhibit obscene matter to others." (Italics added.) The verdict in the first case was likewise in the conjunctive, and those for the two offenses charged at the second trial found the clerk guilty in that he "knowingly distributed obscene matter." Since the new statute does not exempt an employee who engages in such conduct, the clerk has no standing to claim relief under the amendment.

V

The claim that the evidence is insufficient to sustain the conviction of the clerk at the first trial for distributing obscene matter is not borne out by the record. It is alleged that his sole activity in connection with the publication "Response," involved in the first charge, was to obtain a copy of the magazine from the store's stock, and answer a question about the magazine, that with "Animal Lovers" all he did was to read the price off the book, and that with "Sex and the Teenager" his sole participation was to place the book in a paper bag. In *State* v. *J-R Distributors, Inc., supra,* the court upheld the dismissal of the clerk who was charged with aiding and abetting the sale of the obscene material. The court characterized him as a "magazine wrapper . . . not a clerk," and concluded, "One does not aid and abet unless, in some way, he associates himself with the undertaking, participates in it as in something he desires to bring about, and seeks by his action to make it succeed. [Citations.] Mere knowledge or physical presence at the scene of a crime neither constitutes a crime nor will it support a charge of aiding and abetting a crime. [Citations.]" (82 Wn.2d 584, 592-593 [512 P.2d 1049, 1055-1056].)

Here it was stipulated that defendant Castner was a clerk in the store. In the first case the clerk took the money from the officer and secured an unmutilated copy of the publication the officer had selected by the displayed "cover picture." When the officer complained that it did not appear the same, the clerk manifested his knowledge of the contents of the magazine by advising the purchaser that the picture displayed would be found inside. The clerk handed the money over to the manager who returned the change to the counter. That evidence together with the clerk's obvious familiarity with the merchandise brazenly displayed in the store was sufficient to sustain his conviction of distributing on the first charge.

■ The evidence with respect to the clerk's participation in the sale of "Animal Lovers" on January 7, 1971, is not so incriminating. The officer stated that he went into the store and "had a small discussion" with the owner and the clerk who were seated on two stools behind the cash register on the front counter. He attempted to engage them in conversation to secure admissions that could be used by the declarant. The officer's remarks were addressed to both persons seated at the counter, but the only reply was elicited from the owner. The officer, who stated that he wanted a book that depicted animals having different sexual activities with people, was told (presumably by the owner) that they would not talk about the contents of the books they had on display. The owner did point out an area in the store. The officer went to the area, picked up a magazine called "Animal Lovers" and asked the owner if it were "a one-of-a-kind" magazine. The owner stated there were other books of that type in the store and pointed to an area in the store. After the officer went to that area, the owner left his stool and walked by to the left of the clerk, and ultimately leaned over the counter, looked at the area where the officer was standing, pointed to a book labeled "The Animal Lovers" and spoke the name of the title. When the officer returned to the counter with the book which was wrapped in plastic and had a picture on the cover, the owner told him, in answer to his inquiry, that the picture was taken directly from the book, and that the disfigured display copy would be replaced by an identical copy with the picture in it.[10] There was no one else at the counter, and the clerk who was just

---

[10]In an attempt to impeach the officer's testimony that he had asked for a book showing sex between humans and animals, defense brought out on cross-examination that that fact was not mentioned in the officer's report. On redirect, over the defendants' objection, the court permitted the witness to read certain portions of the report to rehabilitate his former testimony and rebut the inference that such testimony was of recent fabrication. The portion read did not contain any reference to the officer's original inquiry. It stated, "The reporting officer entered the business and began (as did the other customers in the store) observing the numerous magazines and books. The reporting officer found on the shelf at the far left-hand wall of the business a magazine entitled Animal Lovers. This magazine was taken up to the counter and the subject Castner [the clerk] above was asked if it could be taken from a clear plastic container so that the contents could be observed by the reporting officer. Mr. Castner stated that the books were to be sold in the form they were in. The reporting officer continued to observe the racks and stands for some minutes and returned and asked if the magazine the reporting officer had was a one-of-a-kind magazine." The report then did corroborate the witness' testimony concerning the owner's subsequent action in guiding the officer to "Animal Lovers."

When the defendants moved to strike the testimony the court denied the motion, but did charge the jury that the portion of the report read was admissible only to negate, as might be determined by the jury, any inference of recent fabrication.

The portion relating to the clerk was improperly admitted as it impeached, not rehabilitated, the prosecution's own witness on a matter in which he had testified

sitting there, rubbing shoulders side by side with the owner, appeared to be following the conversation. The owner took the display copy, replaced it with another copy, and gave the latter copy, which the officer produced in court, to him. The officer secured two other books, and the clerk read off the prices of the books to the owner, who rang them up on the cash register, took the officer's money and gave him change. The officer testified he thought the clerk placed the books in the bag and handed them to him.

In response to the defendants' objection the court instructed the jury that the conversations, in which the clerk did not participate, could only be used against the owner. There is a failure to establish that the clerk participated in the exhibition and distribution of "Animal Lovers" other than to read off the price and place the book in a paper bag. That evidence alone cannot sustain his conviction of distributing "Animal Lovers."

With respect to the book "Sex and the Teenager," a second officer testified that on February 4, 1971, he entered the bookstore, and that, without conversing with the owner or clerk, who were both present, he selected the book from where it was displayed, and took it to the counter where the cash register was located. He stated that without any conversation between himself and the owner or clerk, the owner picked up the book, went to a file cabinet, returned with another copy of the book, stated the price, received money from the officer and gave him his change. The sole testimony concerning the clerk indicates that he was standing side by side with the owner behind the counter, and that he took the second book when it was handed to him by the owner, put it in a paper bag and taped the bag closed.

It was stipulated that on January 7 and February 4, 1971, the defendant, so identified, was a clerk in the bookstore, and that the other defendant was a co-owner of the store.

In *People* ex rel. *Busch* v. *Projection Room Theater* (1976) 17 Cal.3d 42 [130 Cal.Rptr. 328, 550 P.2d 600], the court concluded: "We are aware of no reported cases authorizing the closing of a bookstore or theater, even after it has been repeatedly determined judicially in a full adversary hearing that all or substantially all of the magazines or films exhibited or sold therein are obscene. Indeed plaintiffs have directed our attention to

---

favorably to that defendant. In any event, under the court's ruling, it could not be used to establish the truth of the matter asserted against the clerk.

no such precedents, have presented nothing to countermand or distinguish the authorities referred to above, and at oral argument stated they could find no authority justifying the closing of bookstores in such circumstances. While we have concluded that a court of equity, having determined particular magazines or films to be obscene, after a full adversary hearing, may enjoin the exhibition or sale thereof by those responsible, we emphasize that the closing of such bookstores or theaters, either temporarily or permanently, or the enjoining of the exhibition or sale on said premises of magazines or films not specifically so determined to be obscene, constitutes an impermissible prior restraint in violation of the First and Fourteenth Amendments to the United States Constitution. [¶] We therefore hold that abatement in the present action must be directed to particular books or films which have been adjudged obscene following a fair and full adversary hearing, rather than against the premises in which the material is sold, exhibited or displayed." (17 Cal.3d at p. 59.)

In our opinion by parallel reasoning a prosecution for distributing obscene matter must be directed at those who are in some way shown to be responsible for the distribution of the obscene matter. Even before the enactment of the present exemption (Pen. Code, § 311.2, subd. (c)) mere employment in a store purveying obscene material was not a criminal offense. The assistance which the prosecution proved the clerk rendered in those two instances, packaging the goods already sold to the customer, does not rise to the dignity of aiding or abetting the already completed criminal act. (*State* v. *J-R Distributors, Inc., supra,* 82 Wn.2d 584, 590-595 [512 P.2d 1049, 1054-1057].)

The judgments in actions 24035 and 24143 must be reversed.

## VI

Finally, defendants contend that the material involved is not obscene when subjected to independent review in a constitutional sense. (See *Miller* v. *California, supra,* 413 U.S. 15, 25 [37 L.Ed.2d 419, 431]; and *Zeitlin* v. *Arnebergh, supra,* 59 Cal.2d 901, 910.) In *Bloom* v. *Municipal Court, supra,* the court laid down the following test: "Having previously denied hearing in *Enskat* [*People* v. *Enskat, supra,* 33 Cal.App.3d 900], we now expressly approve that decision. ▇▇ Section 311 has been and is to be limited to patently offensive representations or descriptions of the specific 'hard core' sexual conduct given as examples in *Miller I,* i.e., 'ultimate sexual acts, normal or perverted, actual or simulated,' and

'masturbation, excretory functions, and lewd exhibitions of the genitals.' (413 U.S. at p. 25. . . .) As so construed, the statute is not unconstitutionally vague." (16 Cal.3d at p. 81.)

We have no hesitancy in concluding that the material the subject of these appeals falls within the foregoing description.

The judgments of the municipal court in actions numbered 24014, 24015, 24034 and 24142 are affirmed, those in actions numbered 24035 and 24143 are reversed.

Molinari, P. J., and Elkington, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 4, 1976.